**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **ANTHONY VINCENT TIPTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMAZON.COM SERVICES LLC,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: __________<br><br>**JURY DEMANDED** |

# COMPLAINT

Comes now Anthony Vincent Tipton, by and through counsel, and sues Defendant Amazon.com Services LLC, as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, et seq.

2. Plaintiff Anthony Vincent Tipton is an adult citizen and resident of Cumberland Gap, Tennessee.

3. Upon information and belief, Defendant Amazon.com Services LLC is a limited liability company organized under the laws of Delaware. Defendant operates a fulfillment center facility located at 625 Pine Lakes Drive, Louisville, Tennessee 37777, at which Mr. Tipton was employed.

4. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331 (federal question jurisdiction).

5. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

6. Upon information and belief, Defendant employs more than fifty (50) workers within a seventy-five (75) mile radius of its Louisville, Tennessee facility where Mr. Tipton worked. Defendant is a covered employer under the FMLA.

7. Mr. Tipton was employed by Defendant for approximately five years and worked more than 1,250 hours in the twelve months preceding his requested leave, thereby satisfying the FMLA's eligibility requirements for employee coverage.

## **FACTUAL BASIS**

8. Mr. Tipton was employed by Defendant for approximately five years, including a year-and-a-half at Defendant's TYS1 Amazon Fulfillment Center in Louisville, Tennessee. His most recent period of employment began in October 2023, when he was rehired as a Learning Ambassador.

9. As a Learning Ambassador, Mr. Tipton was responsible for training other employees in various job functions. During his tenure with Defendant, Mr. Tipton consistently received excellent performance evaluations and was entrusted with training other employees in over 20 different roles.

10. Mr. Tipton suffers from anxiety. On December 18, 2024, Mr. Tipton experienced a severe panic attack which resulted in his hospitalization at Claiborne Medical Center. During his

emergency department visit, he presented with elevated blood pressure and symptoms associated with acute anxiety.

11. After being released from the hospital on December 20, 2024, Mr. Tipton returned to work. However, he immediately informed his supervisor, Hunter, about what had happened and his need to take leave to address his medical condition. Hunter advised Mr. Tipton to see an AmCare provider, which is Defendant's in-house medical staff.

12. Hunter also advised that he had no issue with Mr. Tipton taking a leave of absence to address his anxiety.

13. The AmCare team evaluated Mr. Tipton and confirmed his need for medical leave.

14. AmCare then directed Mr. Tipton to Defendant's human resources department to formally request a leave of absence. That same day, Mr. Tipton met with an HR representative named Taylor to discuss his need for leave to address and stabilize his anxiety condition.

15. Taylor advised Mr. Tipton to request leave under the FMLA.

16. On December 21, 2024, Mr. Tipton completed and submitted his FMLA leave request. He also provided medical documentation from his treating physician supporting his need for FMLA leave.

17. Mr. Tipton's physician, Spencer Harmon, PA-C, completed a Physician Statement certifying that Mr. Tipton suffered from mixed anxiety depressive disorder and was totally impaired from working as of December 21, 2024. The physician's statement indicated that Mr. Tipton's return to work date was "to be determined" and recommended leave from work until further notice based on anxiety and depression questionnaires and physical examination findings.

18. Believing that his leave request was approved and that his absence would be protected under the FMLA, Mr. Tipton began his leave on December 21, 2024.

19. On January 16, 2025, Mr. Tipton and his doctor informed Defendant that he intended to return to work on February 14, 2025, which was the day after his next scheduled medical appointment.

20. On January 25, 2025, Mr. Tipton received an email from Defendant's OpsHR Panorama department stating that he had a negative unpaid time balance (UPT). Mr. Tipton immediately responded to the email by sending medical documentation evidencing his request for and need to be out on FMLA leave.

21. On January 27, 2025, Mr. Tipton received another email from OpsHR Panorama, again stating that he had a negative UPT balance. Mr. Tipton again responded by informing Defendant that he had requested an extended leave of absence pursuant to the FMLA and provided additional medical documentation.

22. Despite Mr. Tipton's repeated communications regarding his FMLA leave request and his submission of medical documentation, on February 4, 2025, Mr. Tipton received an email from "HR-RC-NA-NUPT" stating:

> You are receiving this email because you are negative in your Unpaid Time (UPT) balance. We tried calling you today around 7:55 p.m.
>
> After reviewing your case, we have decided to proceed with termination due to violation of Amazon's attendance policy.

23. Notably, although the email stated that Defendant tried to call Mr. Tipton at 7:55 p.m., the email itself was sent at 7:54 p.m.—before the purported phone call.

24. The following day, on February 5, 2025, Mr. Tipton received an email from Sr. Case Manager DLS, Shalaka H, stating that one of his leave cases had been cancelled because a

"duplicative case" was found for different dates. However, Mr. Tipton had only ever made one leave request.

25. Mr. Tipton responded to this email, inquiring as to why his leave request had not been approved and pleading for his job. In this email, he again explained that his leave requests were medically necessary.

26. Despite his efforts, on February 6, 2025, Mr. Tipton received a letter from Defendant formalizing his termination, with the stated reason being his alleged violation of Amazon's attendance policy. The effective date of his termination was February 5, 2025.

27. On the same day Mr. Tipton received his formal termination letter—February 6, 2025—he also received notification that his FMLA leave request had been approved. The FMLA approval covered all of the days that Mr. Tipton had been absent, specifically from December 22, 2024 to January 25, 2025, and from January 27, 2025 to February 3, 2025.

28. The FMLA approval notification also stated that Mr. Tipton had 3 weeks and 30 hours of FMLA leave remaining and that he "must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on [his] return from FMLA-protected leave."

29. No explanation was provided as to why the FMLA approval took nearly two months to process, despite Mr. Tipton having submitted all required medical documentation in December 2024.

30. On February 11, 2025, Mr. Tipton went in person to Defendant's Amazon facility to appeal the decision to terminate his employment. That day, he spoke with an HR representative and showed the representative all of the documents approving his FMLA leave

and laying out the timeline of events leading to his termination, including the overlap between the days he was allegedly absent and his approved FMLA leave days.

31. The HR representative acknowledged the documents shown to him by Mr. Tipton and simply responded that he had not received those documents. Despite having the evidence of approved FMLA leave directly in front of him, the HR representative refused to reconsider the termination decision.

32. Mr. Tipton was subsequently cleared by his physician to return to work. However, Defendant has refused to reinstate him despite the fact that his FMLA leave was retroactively approved and covered all of the absences for which he was terminated.

## CAUSES OF ACTION

### I. FMLA Interference

33. The averments of the above paragraphs are incorporated herein by reference.

34. Defendant is a covered employer under the FMLA, as it employs more than fifty (50) workers within a seventy-five (75) mile radius of the facility where Mr. Tipton worked.

35. Mr. Tipton was an eligible employee under the FMLA. He had been employed by Defendant for more than twelve months and had worked more than 1,250 hours in the twelve months preceding his request for FMLA leave.

36. Mr. Tipton was entitled to take FMLA leave due to his own serious health condition—namely, mixed anxiety depressive disorder—which substantially limited his ability to perform the material and substantial duties of his position.

37. Mr. Tipton provided adequate notice of his need for FMLA leave. On December 21, 2024, he formally requested FMLA leave and submitted medical documentation from his treating physician certifying that he suffered from a serious health condition and was totally impaired from working.

38. Defendant had actual knowledge of Mr. Tipton's serious health condition and his need for FMLA leave. Mr. Tipton's supervisor, Hunter, was informed of his hospitalization and need for leave. Defendant's AmCare medical team confirmed his need for leave. Defendant's HR representative, Taylor, specifically advised Mr. Tipton to request FMLA leave. And Mr. Tipton submitted medical documentation supporting his request.

39. Despite having sufficient information to determine that Mr. Tipton's requested leave qualified as FMLA leave, Defendant failed to timely designate his leave as FMLA-protected. Under 29 C.F.R. § 825.300(d), an employer must notify an employee whether leave will be designated as FMLA-qualifying within five business days of obtaining sufficient information. Defendant did not approve Mr. Tipton's FMLA leave until February 6, 2025—nearly two months after his request and after his termination.

40. Defendant denied Mr. Tipton FMLA benefits to which he was entitled. Specifically, Defendant terminated Mr. Tipton on February 5, 2025, for alleged violations of its attendance policy based on absences that were later determined to be FMLA-protected. The absences for which Mr. Tipton was terminated—December 22, 2024 to January 25, 2025, and January 27, 2025 to February 3, 2025—were the exact dates subsequently approved as FMLA leave.

41. Defendant's termination of Mr. Tipton for taking FMLA-protected leave interfered with, restrained, and denied the exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

42. Even after retroactively approving Mr. Tipton's FMLA leave and acknowledging his right to reinstatement, Defendant has refused to reinstate him to his former position or an equivalent position, thereby further denying him the benefits to which he is entitled under the FMLA.

43. Defendant's violations of the FMLA were willful. Defendant had actual knowledge that Mr. Tipton had requested FMLA leave and had submitted medical documentation supporting his request. Despite this knowledge and despite receiving multiple communications from Mr. Tipton during his leave explaining that his absences were medically necessary and covered by the FMLA, Defendant terminated him for attendance violations. Defendant then retroactively approved the same absences as FMLA-protected, demonstrating that Defendant knew or showed reckless disregard for whether its conduct violated the FMLA. Moreover, when confronted with evidence of approved FMLA leave covering all of Mr. Tipton's absences, Defendant still refused to reconsider its termination decision or reinstate him.

## II. <u>Failure to Provide Required FMLA Notices</u>

44. The averments of the above paragraphs are incorporated herein by reference.

45. Upon receiving sufficient information to determine whether Mr. Tipton's leave qualified under the FMLA, Defendant was required by 29 C.F.R. § 825.300 to provide Mr. Tipton with timely notice of his eligibility for FMLA leave, his rights and responsibilities under the FMLA, and the designation of his leave as FMLA-qualifying.

46. Defendant failed to provide Mr. Tipton with timely notice that his leave was designated as FMLA-qualifying. Although Mr. Tipton submitted his FMLA request and supporting

medical documentation on or about December 21, 2024, Defendant did not notify him that his leave was approved as FMLA-protected until February 6, 2025—forty-seven days later.

47. Under 29 C.F.R. § 825.300(d), Defendant was required to notify Mr. Tipton whether his leave would be designated as FMLA-qualifying within five business days of obtaining sufficient information to make that determination. Defendant's nearly two-month delay in providing such notice violated this requirement.

48. Defendant's failure to timely notify Mr. Tipton that his leave was FMLA-protected resulted in harm to Mr. Tipton. Had Defendant timely designated his leave as FMLA-qualifying, Mr. Tipton would have been protected from termination for attendance violations related to his approved FMLA leave.

49. Moreover, the timing of Defendant's belated FMLA approval—occurring the day after Mr. Tipton's termination—suggests that Defendant deliberately withheld or delayed the approval in order to justify terminating him for attendance violations.

50. Defendant's failure to provide required FMLA notices interfered with Mr. Tipton's ability to exercise his rights under the FMLA and violated 29 U.S.C. § 2615(a)(1) and the implementing regulations at 29 C.F.R. § 825.300(d).

## HARMS AND LOSSES

51. As a direct and proximate result of Defendant's willful violations of the FMLA, Mr. Tipton has and will continue to suffer a loss of income from the date of his termination through trial and beyond, loss of employment benefits including health insurance and retirement

contributions, loss of job opportunities, loss of contributions to public welfare benefits such as Social Security and Medicare, emotional distress, mental anguish, humiliation and embarrassment, increased medical expenses, impact on his personal relationships and family, and loss of enjoyment of life, all for which Defendant is liable to Mr. Tipton.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Vincent Tipton respectfully prays for the following relief:

52. A judgment that Defendant interfered with, restrained, and denied the exercise of his rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1) and that such violations were willful;

53. A judgment that Defendant failed to provide required FMLA notices in violation of 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.300;

54. That all factual issues be decided by a jury;

55. An award of all lost wages and lost employment benefits from the date of his termination through trial;

56. An award of liquidated damages equal to the amount of lost wages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

57. Prospective relief consisting of reinstatement to his former position as Learning Ambassador with all back pay, benefits, and seniority restored;

58. In the alternative to reinstatement, an award of front pay;

59. Pre- and post-judgment interest;

60. Reasonable attorneys' fees, expert witness fees, and all costs of litigation as authorized by 29 U.S.C. § 2617(a)(3); and

61. All further relief, both legal and equitable, as allowed by the laws and facts at issue in this case.

RESPECTFULLY SUBMITTED,

*s/ Clint J. Coleman*
CLINT J. COLEMAN (BPR # 038413)
EAST TENNESSEE EMPLOYMENT LAW, PLLC
520 W. Summit Hill Drive, Suite 101
Knoxville, TN 37902
(865) 383-1053
clint@etnemploymentlaw.com

*Attorneys for Plaintiff Anthony Vincent Tipton*